# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Everett Frazier,**
**Commissioner of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 20-0034** (Kanawha County 17-AA-70)

**Tina Bowman,**
**Petitioner Below, Respondent**

**FILED**
**March 23, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine K. Skorich, appeals the December 16, 2019, order of the Circuit Court of Kanawha County, affirming the order of the Office of Administrative Hearings ("OAH") reinstating the driving privileges of respondent Tina Bowman. Respondent, by counsel Matthew M. Hatfield, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered petitioner's brief, respondent's summary response, and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order consistent with this decision.

Respondent was arrested for driving under the influence of controlled substances ("DUI") on May 17, 2011.[1] During the course of his investigation of the May 17, 2011, offense, investigating officer Michael Vance, a West Virginia State Trooper, requested that respondent submit to a secondary chemical test of blood.[2] Respondent acquiesced to the test and her blood

---

[1] Inasmuch as we are reversing and remanding this case to the circuit court for further proceedings on grounds that do not bear on the circumstances surrounding respondent's arrest, those circumstances are not addressed in detail herein.

[2] Trooper Vance has since retired from the West Virginia State Police.

1

sample was obtained at Boone Memorial Hospital.[3] Trooper Vance took custody of the blood sample and transmitted the same to the West Virginia State Police Laboratory for testing. However, the blood sample was never tested.

Following her arrest, the DMV sent respondent an order dated June 15, 2011, which revoked her driver's license. Respondent appealed the revocation and, on June 20, 2011, submitted a written objection and hearing request form to the OAH on which she checked a box to indicate that she wished "to challenge the results of the secondary chemical test of the blood, breath or urine." Further, respondent directed a letter to the OAH, attaching the results of a urine toxicology screen administered to respondent on May 17, 2011, and advised that respondent wished to cross examine the individual(s) who administered any applicable urine or secondary chemical tests to respondent.

An administrative hearing was conducted before the OAH on September 22, 2011. Shortly thereafter, proposed findings of fact and conclusions of law were submitted by the State to the OAH. In a November 10, 2011, letter to the OAH, respondent noted her objections to the proposed findings and again argued that the order of revocation should be reversed. On March 22, 2012, the OAH entered its final order affirming the revocation of respondent's license. Specifically, the OAH found that there was "sufficient evidence" presented to show that respondent drove a motor vehicle in this State while under the influence of alcohol or drugs on May 17, 2011.

Thereafter, respondent filed an administrative appeal of the OAH's order in the Circuit Court of Boone County. Ultimately, the matter was remanded to the OAH as the transcript from respondent's September 22, 2011, hearing before the OAH was "substantially unintelligible." A second hearing was conducted before the OAH on May 23, 2017.[4] In its final order, issued on August 3, 2017, the OAH reversed the order of revocation and concluded that the "investigating officer's failure to test [respondent's] blood or to make blood evidence available to [respondent] for further testing" was a denial of respondent's statutory due process rights under West Virginia Code § 17C-5-9 (2013).[5]

---

[3] In addition to providing a blood sample for a secondary chemical test of her blood, respondent provided a sample for a urine test. The urine test was not requested by Trooper Vance.

[4] The second hearing before the OAH, initially scheduled for January 30, 2015, was continued multiple times.

[5] West Virginia Code § 17C-5-9 provides:

> Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof

(Continued . . .)

2

The DMV appealed the OAH's order to the Circuit Court of Kanawha County. By order entered on December 16, 2019, the circuit court affirmed the OAH's order. The court held that respondent's agreement to submit to a blood test at the request of the investigating officer afforded her the same due process rights had she demanded a blood test. The court reasoned that respondent's due process rights were not "contingent upon a race between the driver and the police officer to first request" a blood test and/or an analysis thereof. The circuit court specifically referenced this Court's decisions in *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015), and *Reed v. Divita*, No. 14-1018, 2015 WL 5514209 (W. Va. Sept. 15, 2018) (memorandum decision), and found that petitioner's "violation of [r]espondent's statutory and due process rights under West Virginia Code § 17C-5-9 [is] dispositive." It is from the circuit court's December 16, 2019, order that petitioner now appeals.

> "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996)." Syl. Pt. 1, *Dale v. Odum*, 223 W. Va. 601, 760 S.E.2d 415 (2014).

Syl. Pt. 1, *Frazier v. Bragg*, __ W. Va. __, 851 S.E.2d 486 (2020). Guided by this standard, we review petitioner's argument.

In its single assignment of error on appeal, petitioner asserts that the circuit court erred in upholding the rescission of respondent's license revocation simply because the officer-requested blood sample was not analyzed. Petitioner contends that because respondent did not demand or request a blood draw on the date of her arrest, West Virginia Code § 17C-5-9 is not applicable to this case. We agree.

In *Bragg*, this Court held that because a "blood draw" was performed "at the request of law enforcement officers" the provisions of West Virginia Code § 17C-5-6 (2013), rather than West Virginia Code § 17C-5-9, apply.

West Virginia Code § 17C-5-6 provides, in pertinent part, that

> [o]nly a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of the law-enforcement officer, may withdraw blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled substance, drug, or any combination thereof . . . . The person tested may, at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or

---

> be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

3

trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.

This Court has long held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959). As to West Virginia Code § 17C-5-6, the *Bragg* court found that

[t]he language of West Virginia Code § 17C-5-6 is clear and unambiguous that a law enforcement officer's duty to make available information about the test performed at the request of the officer (including blood test results) does not exist absent a request for such information by the person who is tested.

*Bragg*, __ W. Va. at __, 851 S.E.2d at 494. Simply "marking the box on the hearing request form" that the driver "wish[ed] to challenge the results of the secondary chemical test of the blood, breath or urine" is not enough. *Id*.

In the instant case, there is no dispute that the blood test was performed at the request of the investigating officer. At the second hearing before the OAH, respondent acknowledged that she voluntarily consented to give a blood sample for testing. In its December 16, 2019, order, the circuit court made particular findings that Trooper Vance requested that respondent submit to a blood test and respondent agreed. There is no indication in the record, aside from respondent's simple check on a box on the hearing request form and her counsel's contemporaneous June 20, 2011 letter to the OAH, that she wished to challenge the results of the blood test at the administrative hearing. Respondent has not alleged that she requested any information concerning the blood sample either for the purpose of having the sample independently tested or for use otherwise at the administrative hearing. Accordingly, we find that West Virginia Code § 17C-5-6, as opposed to West Virginia Code § 17C-5-9, applies to the instant case. As West Virginia Code § 17C-5-6 applies to the facts of the underlying case, we find that the OAH and the circuit court's reliance on West Virginia Code § 17C-5-9 and the case law construing it (i.e., *Hall* and *Divita*) was misplaced and clearly wrong.[6]

---

[6] As this Court noted in *Bragg*, the *Hall* and *Divita* cases both "involved drivers who were arrested for DUI and . . . demanded that a sample of blood be taken pursuant to West Virginia Code § 17C-5-9 (2013)." *Bragg*, __ W.Va. at ___ n.2, 851 S.E.2d at 490 n.2. In both *Hall* and *Divita*, this Court upheld the reversal of the drivers' license revocation orders because their blood samples were taken but not tested. However, in the instant case, unlike *Hall* and *Divita*, respondent did not demand a blood test be taken, but rather agreed to submit to a blood test requested by the investigating officer. Accordingly, respondent's case must be decided under West Virginia Code § 17C-5-6 and not West Virginia Code § 17C-5-9.

Having determined that the circuit court erred in affirming the OAH's order reversing the revocation of respondent's license based only on the fact that respondent's blood sample was not tested, and because the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of respondent's driver's license.

For the foregoing reasons, the circuit court's December 16, 2019, order is hereby reversed, and the case is remanded for determination of whether there was sufficient proof to warrant the administrative revocation of respondent's license. To facilitate the commencement and conclusion of the remand proceedings, we direct the Clerk of this Court to issue the mandate of this Court contemporaneously with the issuance of this decision.

Reversed and remanded with directions.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton